402 P.2d 992

STATE of Arizona, Appellee,

v.

Johnny GORTAREZ, Appellant.

No. 1440.

Supreme Court of Arizona,

En Banc.

June 10, 1965.

See also 96 Ariz. 206, 393 P.2d 670.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., for appellee.

Ross Anderson, Phoenix, for appellant.

McFARLAND, Justice.

Johnny Gortarez, appellant hereinafter referred to as defendant, was convicted and

sentenced for a term of not less than eight nor more than ten years in the Arizona State Prison for illegal sale of narcotics, in violation of A.R.S. § 36–1002.02, as amended. From this conviction and sentence defendant appeals.

On April 16, 1963, defendant, while standing on the step of the home of one Gloria Medina, was approached by Jesse Saenz, Jr., an informer for the Arizona state liquor department. Saenz asked defendant if he had any "carga" (slang for heroin) for sale. Defendant replied affirmatively if Saenz had $10.00. Saenz stated he did not have any money, but that his friend "Mike" who was waiting in a parked car, did have ten dollars. Thereupon Saenz proceeded to the car, and received $10.00 from "Mike," who was in reality Roy Madrid, an agent of the Department of Liquor Licenses and Control. Saenz returned, handed defendant the money, and received a small white paper which contained heroin. Saenz turned the paper over to Madrid, who departed immediately. Later, defendant was arrested. He was tried before a jury and convicted on September 30, 1963.

Defendant cites ten propositions as error. He first contends that the trial court erred in denying his motion to remand the case for preliminary hearing. He claims that his waiver of the preliminary hearing, when he was indigent and without the aid of counsel, occurred at a "critical stage of the proceedings," and therefore he was denied his legal rights under the United States Constitution. In State v. Schumacher, April 1, 1965, 97 Ariz. 354, 400 P.2d 584, where defendant raised the same objection as in the instant case, contending that the preliminary hearing was a critical stage of the proceedings, we held:

"Generally, the failure to assign counsel prior to preliminary examination, unless a defendant's position has been prejudiced thereby, is not considered a denial of the Sixth Amendment rights. French v. Cox, 74 N.M. 593, 396 P.2d 423; State v. Cox, 193 Kan. 571, 396 P.2d 326; Application of Hoff, Nev., 393 P.2d 619. Cf. Wells v. State of California, D.C., 234 F.Supp. 467.

\* \* \* \* \* \*

"The waiver of the preliminary examination by a defendant is in effect a concession that there is evidence sufficient to find probable cause to hold him to answer for the offense charged. See also State v. Peats, 97 Ariz. 133, 397 P.2d 631, where we passed on the question here presented without comment in concluding there was no denial of constitutional rights; and see State v. Graninger, 96 Ariz. 172, 393 P.2d 266." 97 Ariz. at 357, 400 P.2d at 585 and 586.

The record in the instant case does not reveal that defendant's rights were prejudiced:

by not having counsel at the preliminary hearing; hence, this assignment of error is not well founded.

■■ Defendant claims the court erred by twice denying his motion for a bill of particulars. In his brief he does not set forth how he was prejudiced but relies solely on his contention that the granting of a bill of particulars was mandatory and not discretionary. Rule of Criminal Procedure No. 116, 17 A.R.S. provides:

"A. When an indictment or information charges an offense in accordance with the provisions of Rule 115, but fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes, or the county attorney may of his own motion furnish such bill of particulars."

This rule makes a bill of particulars mandatory only when it is necessary under the conditions as set forth therein. The necessity thereof rests in the sound discretion of the court. State v. Benham, 58 Ariz. 129, 134, 118 P.2d 91, 93 (1941). The court, in denying the motion, found a bill of particulars was not necessary in the instant case, and did not abuse its discretion. State v. Colvin, 81 Ariz. 388, 307 P.2d 98 (1957)

■ Defendant asserts as error the following testimony of the witness Saenz:

"Q What did you do then?

"A We started as an undercover agent, about going, seeing this fellow that was trafficking narcotics in the same vicinity of 9th Street."

Defendant claims that this testimony, coupled with the later testimony of Saenz and agent Madrid to the effect that they proceeded to 9th Street, observed defendant, and negotiated a sale of narcotics with him, constituted reversible error, viz., the representation to the jury of an innuendo of prior criminal activity on his part. Defendant claims under the rule set forth in State v. Kellington, 93 Ariz. 396, 381 P.2d 215 (1963), his rights were prejudiced, and that his motion for mistrial on this ground should have been granted. We do not agree with this contention. The portion of the transcript following the statements objected to by defendant reveals the following response by Saenz in answering the question as to whom he saw when he went to 9th Street.

"Q Who did you see there?

"A We were after to see this fellow that lives on 9th Street, *and he wasn't there,* so we continued on 9th Street,

and it was a deadend, that is when we saw the defendant standing right by the door." [Emphasis supplied.]

The record clearly shows that the person "trafficking narcotics" was some one other than defendant, and therefore any implication of prior criminal misconduct was directed to that other person.

Under assignments No. 4 and No. 5 defendant contends that the court erred in its ruling in regard to the showing that the state's witness was addicted to heroin and therefore showing mental or physical defects; also in refusing to allow testimony as to how a drug addict became employed by the state on an issue of promised immunity from prosecution. To support his contention he referred specifically to the following cross-examination of the witness Saenz by defense counsel:

"Q Now, you say you have been employed by the Arizona State Liquor Agency, is that not correct?

"A Correct.

"Q And you are in the narcotics division?

"A That is true.

"Q Could you tell us the circumstances how you came about being employed by the narcotics agency?

"A MR. BUTTERFLY: I will—

"THE COURT: Sustained.

"MR. ANDERSON: If the Court please, he has testified he is an employee of the State Narcotics Agency. I would like to test this and see if he is.

"THE COURT: You may go into that as to the dates that were discussed here."

During a conference out of the hearing of the jury, the following colloquy occurred:

"MR. ANDERSON: May I be allowed to show he is a drug addict, and the jury can infer that his ability to memorize and hear and listen—

"THE COURT: No, I think I have stated the Court's position. You can show any of the circumstances around or surrounding the date in question or close enough to it that might affect these items to impeachment. The Court previously said that it will not allow any insinuations of other crimes unless you are prepared to show a conviction, that he has been convicted of a crime concerning narcotics. You may do so.

"MR. ANDERSON: I may not show the Court by evidence that he has taken narcotics the day this incident happened?

"THE COURT: The day prior to it?

"MR. ANDERSON: The day this happened.

"THE COURT: Prior to the time he testified? I would say yes.

"MR. ANDERSON: He hasn't been convicted on it?

"THE COURT: No.

"MR BUTTERFLY: Our position as what he testified to on September has nothing to do with his power of observations on April 16. His power of observations may also be tested, but it is on the time, he can't go back to September.

"THE COURT: You may show the surrounding circumstances on the 16th day. He testified whatever they may have been to effect of physical and mental attributes."

Defendant claims the court should have permitted the witness to answer the following question:

"Could you tell us the circumstances surrounding how you came about being employed by the Narcotics Agency?"

This was undoubtedly a preliminary question, and the court should have permitted it to be answered. However, counsel for defendant, out of the hearing of the jury, stated that if allowed he would show that Saenz was an informer, and that he received $25 for every person informed on, and that he had been threatened by the police and was offered immunity if he would cooperate with them. The defendant was then permitted to examine Saenz as to his method of pay. Saenz testified that he was an informer for the Department of Liquor Licenses and Control, Narcotics Division, and that he had been paid "$35.00 per head"—that this arrangement of employment continued for about three months. After that he was paid a salary of $400 a month. He also testified that he had not been offered immunity in regard to any prosecution for testifying in this case, and that no police officer had threatened him if he did not testify; that he had told the police he had sold heroin in the past, but that there were no charges against him at the time of the trial. Also in the course of his testimony he admitted that he had used narcotics in the past. Counsel for defendant was permitted to ask Saenz if he had taken a "shot" of heroin on the morning of the trial. He answered that he had not, and stated that he quit taking heroin about the middle of December 1962, and he had not taken any since that time.

Large latitude is permitted in cross-examination of a prosecuting witness to show motive, bias, and interest. State v. Burruell, 98 Ariz. 37, 401 P.2d 733 (May 5, 1965); State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120; State v. Aldrich, 75 Ariz. 53, 251 P.2d 653. It will be noted that, although the court sustained the objection to the preliminary question in regard to circumstances as to how Saenz came to be employed by the narcotics divi-

sion, and at first restricted the cross-examination to the use of narcotics, after the avowals, testimony was admitted regarding the circumstances of his employment and in regard to Saenz's use of narcotics. Under these circumstances the ruling of the court was not prejudicial error.

Assignment of Error No. 6 was evidently abandoned by defendant, as the evidence objected to is not set forth, and he does not discuss it in his brief. Therefore, we did not consider this assignment.

Assignment of Error No. 7 refers to the fact that the court, in a conference outside the hearing of the jury, sustained an objection to a question propounded by the prosecutor in his direct-examination of agent Madrid, ordered the answer stricken, but, upon resuming the trial before the jury, failed to instruct the jury to disregard the answer. The deputy county attorney asked agent Madrid, in referring to the white paper allegedly containing heroin:

"Q  Where did you get that, or where did you first see that piece of paper?

To which Madrid replied:

"A  By Mr. Saenz when he handed it to me on April 16, that was the paper that—

"THE COURT: Speak up.

"THE WITNESS: A—that the defendant sold to me—Saenz."

Counsel for defendant then moved to strike the answer on the grounds that it was a jury question. The court then stated that the answer would be stricken, and that counsel could rephrase the question.

■■  The grounds for the request for striking the testimony was without merit; hence, the failure of the court to instruct the jury to disregard it was not error. The testimony of agent Madrid which defense objects to could easily be characterized as a vernacular description by the witness. State v. McCullough, 94 Ariz. 209, 382 P. 2d 682 (1963).

■  Assignment of Error No. 8 states that the trial court erred when it failed to grant a directed verdict of entrapment. Defendant asserts that the record clearly shows that the crime originated in the minds of agent Madrid and the informer Saenz. Defendant asserts that he was lured into the commission of the crime charged in order to prosecute him. This court has carefully reviewed the record, and we are unable to agree with the interpretation given the testimony by defendant. The record discloses that the informer Saenz merely afforded defendant an opportunity to commit the offense charged. Defendant willingly entered into the sale of the narcotics. He was not persuaded, or deceitfully lured into the commission of the offense.

■  In State v. Hernandez, 96 Ariz. 28, 391 P.2d 586, we stated:

"* * * the defense of entrapment does not arise where one is ready to commit the offense given but the opportunity, Bloch v. United States, 9 Cir., 226 F.2d 185; Cline v. United States, 9 Cir., 9 F.2d 621." 96 Ariz. at 31, 391 P.2d at 587.

Entrapment occurs only when there is undue persuasion, deceitful representation, or inducement to commit a crime which a defendant had not contemplated and would not otherwise have committed. State v. Hernandez, supra; Hoy v. State, 53 Ariz. 440, 90 P.2d 623; Lutfy v. United States, 198 F.2d 760, 33 A.L.R.2d 879.

Defendant next contends that the court erred in indicating in recess that it would not permit Manuel Gortarez, defendant's brother, to testify regarding the fact that Saenz had stated to defendant's mother that he would not appear in court and testify against defendant. We have carefully examined the record, and we find defendant's mother did testify to the conversation she had with Saenz prior to the trial. When Manuel Gortarez started to testify the deputy county attorney asked for a recess and made a motion to strike Mrs. Gortarez's testimony regarding the conversation on the grounds that it was an attempt to impeach on a collateral matter. Counsel for defense argued that the testimony did show Saenz's motive for testifying. The court never ruled upon this matter, but stated that it would check the law during the recess, and that Manuel would not be allowed to testify in regard to the conversation on September 21st unless defense counsel went further and showed that it was material to the issue. Otherwise, it would be collateral.

█ █ Upon resuming trial of the case before the jury, after the recess, defense counsel withdrew Manuel from the stand, and placed Alice Gortarez, defendant's sister, upon the stand to finish testimony which she had not completed. The rule that you cannot impeach on a collateral matter is well settled; however, defendant contends in his brief that the evidence was admissible for the reason that it showed motive, bias, and interest. Defendant's counsel, after withdrawal of defendant's brother, never again offered evidence or requested a ruling from the court, nor did he make an avowal or offer of evidence to show motive. This assignment is therefore unfounded.

Under Assignment of Error No. 10, defendant contends that he was prejudiced by the following argument of the deputy county attorney and the ruling of the court on the objection thereto:

"He said that the bad guys are saying things about the good guys, and that is exactly true. He said he is a bad guy (indicating), and he is a bad guy (indicating). They get up there and the only way they hope to win the case is

by impugning the witnesses of the State. They don't get up and put on a defense on the merits, they get up and characterize that man or those witnesses and liers, and that is the only defense, everybody is lying except me, and I am lily white. This man said that guy is lily white. We can't prove what that man is because the law don't let us prove it.

"MR. ANDERSON: I take exception.

"THE COURT: The door was opened. You may proceed."

We call attention to the fact that counsel for defendant during his argument had discussed the credibility of the state's witnesses, taking them up one by one, and had particularly singled out the narcotics agents. In the course of his argument he said:

"You are going to have to test the credibility of all the witnesses. He said, 'Don't count the number of witnesses'. We only have two months, they have had since April 16 to find out what kind of man this man here is as far as truth and veracity is, and not one witness came up to that, and he testified in that regard."

And, then, again referring to Johnny Gortarez:

"Not one thing said against this person, Johnny Gortarez. Not one single, isolated—just one isolated sale, down the middle there, bam—there it is."

The court, in its discretion, overruled the objection on the basis that the door had been opened. The general ruling in regard to remarks of prosecuting attorneys is set forth in 23A C.J.S. Criminal Law § 1108, p. 210—

"a. In General

"Where remarks of the prosecuting attorney, even if improper, are invited or occasioned by accused's counsel, or are in reply to, or retaliation for, his acts or statements, they are, as a general rule, not grounds for reversal, unless they go beyond a pertinent reply or are necessarily prejudicial."

In Post v. State, 41 Ariz. 23, 15 P.2d 246, we stated:

"The sixth assignment is directed at remarks of the county attorney made in reply to the arguments of defendant's attorney, but inasmuch as we have not before us what was said by the defendant's attorney that caused the county attorney to reply as he did it is not possible to condemn as error the language assigned. It may have been provoked. Its very context shows that it was. Improper remarks of the county attorney when provoked by defendant's arguments are not, generally speaking, grounds for reversal. 16 C.J. 911, § 2261." 41 Ariz. at 29, 15 P.2d at 248.

In State v. Cusumano, Mo., 372 S.W.2d 860 (1963), the court stated:

"On what theory defendant thought it would be admissible for the state to show what Mrs. McGinty told a police officer about the occurrence is not explained and this would be some basis for a reference to the rules of evidence. In any event, the trial court has considerable discretion in acting on retaliatory statements and the appellate court must rely to some extent upon this discretion. [Cases cited.] Although we do not approve the statement made, our conclusion is that abuse of the trial court's discretion is not shown and this assignment of error is overruled." 372 S.W. at 866

It will be noted that, as pointed out above, the defense attorney among other things had stated that there was "Not one thing said against this person, Johnny Gortarez." " * * * just one isolated sale, * * * "

▮ Taking into consideration the whole of the argument and the charges and counter-charges in regard to the credibility of the witnesses, we are of the opinion that the court did not abuse its discretion in holding that the statement was provoked. The court gave the following instruction to the jury in regard to the arguments of counsel:

"The arguments of counsel which were based on evidence and confined to the issues in the case are addressed to your reason and should receive due consideration, but arguments or comments of counsel are not evidence and should not be considered by you as such."

Although we do not approve the statement made by the deputy county attorney, on the basis of the record and the instruction of the court to the jury, we hold the statement of the deputy county attorney was not prejudicial error.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and BERNSTEIN, JJ., concurring.